# In the United States Court of Federal Claims

No. 10-547C

(Filed Under Seal: September 3, 2010)

(Reissued for Publication: September 13, 2010)[1]

| | | |
|---|---|---|
| ************************************* | * | |
| | * | |
| | * | |
| THE SHERIDAN CORPORATION, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Bid Protest; Improper Corrective Action Following GAO Protest;  Improper Use of Competitive Range; FAR 15.306(c); Request For Revised Proposals Where Agency Requirements Are Unchanged; Impermissible Auction Through Price Disclosure; Preliminary Injunction. |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant, | * | |
| and | * | |
| | * | |
| JCN CONSTRUCTION COMPANY, INC., | * | |
| Defendant-Intervenor. | * | |
| | * | |
| ************************************* | * | |

*Michael A. Gordon*, with whom was *Fran Baskin*, law firm of Michael A. Gordon PLLC, Washington, DC, for Plaintiff.

*Cameron Cohick*, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kenneth M. Dinzter*, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, for Defendant.

*Robert J. Symon*, with whom was *Lewis P. Rhodes*, Bradley Arant Boult Cummings LLP, Washington, DC, for Defendant-Intervenor.

OPINION AND ORDER ON PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION

---

[1] The Court issued this opinion under seal on September 3, 2010, and gave the parties until September 10, 2010, to submit any proposed redactions of competition sensitive, proprietary, confidential or other protected information. The parties requested the redaction of only one word in the "Background" section. The redaction is indicated by […].

WHEELER, Judge.

In this bid protest, Plaintiff Sheridan Corporation ("Sheridan") is challenging an agency's corrective action that would involve the submittal of revised proposals where no apparent reason for such action exists. The United States Property and Fiscal Office of Maine, National Guard Bureau ("the agency") awarded a contract to Sheridan on May 12, 2010 for the construction of a KC-135 aircraft hangar in Bangor, Maine. The agency made the award to Sheridan on the basis of initial proposals, without conducting any discussions with offerors. The agency evaluated all of the proposals received, and determined that Sheridan's proposal, considering price and past performance, represented the overall best value to the Government. The agency issued a notice to proceed to Sheridan, and established a contract completion date of August 7, 2012.

Following the award to Sheridan, a competing offeror, JCN Construction Company ("JCN"), filed a protest at the Government Accountability Office ("GAO") alleging disparate treatment in the evaluation of proposals. Upon the filing of the GAO protest, the agency suspended the performance of Sheridan's contract. A short time later, the agency decided to take corrective action. The GAO then dismissed JCN's protest as academic.

Under the proposed corrective action, the agency allowed JCN and another offeror, Nauset Construction Company ("Nauset"), into the "competitive range." The agency invited Sheridan, JCN, and Nauset to submit revised proposals, which were due on August 13, 2010. Unless enjoined, the agency plans to evaluate the revised proposals and make a new contract award in early September 2010. The Administrative Record contains no explanation for why the agency invited revised proposals in circumstances where none of the agency's requirements had changed. Moreover, the concept of a "competitive range" under Federal Acquisition Regulation ("FAR") 15.306(c) has no application where an agency awards a contract without conducting any offeror discussions. The agency has not terminated Sheridan's contract, but Sheridan's performance remains suspended pending the agency's completion of the corrective action.

Sheridan filed suit in this Court on August 12, 2010 requesting declaratory and injunctive relief, alleging that the agency's corrective action is unlawful and lacks a rational basis. The agency disclosed Sheridan's winning price before requesting revised proposals, and thus has authorized an impermissible auction to occur by allowing two unsuccessful offerors a second chance for the award, knowing the Sheridan price that they must beat. Although revised proposals often are appropriate where an agency has modified its solicitation requirements, or where the agency has engaged in discussions or negotiations before inviting offerors to submit final proposal revisions, the Court cannot see any lawful or rational basis for the corrective action here.[2]

---

[2] If the agency believed there was some merit to JCN's protest, the agency could have re-evaluated the initial proposals to determine if some adjustment to the agency's award decision should be made. Indeed, JCN's counsel agreed with this proposition during the oral argument. Aug. 31, 2010 Transcript ("Tr.") 50. However, this form of corrective action is not before the Court.

The Court heard argument on Sheridan's motion for a preliminary injunction on August 31, 2010. At the close of the argument, the Court stated on the record that the preliminary injunction would be issued, and explained orally the reasons supporting the need for this action. See Aug. 31, 2010 Transcript ("Tr.") 55-59, 61. On September 1, 2010, the Court issued the Preliminary Injunction drafted by Sheridan's counsel and reviewed by Defendant's and JCN's counsel. The Court indicated both at the hearing and in the September 1, 2010 Order that this opinion would follow. The effect of the Preliminary Injunction is to prohibit the agency from proceeding further with its corrective action until the Court issues a final ruling on Plaintiff's motion for permanent injunction and declaratory judgment.

Background

On December 4, 2009, the agency issued Solicitation No. W912JD-10-R-0001 ("RFP") for a firm fixed price contract to construct a new 78,000 square foot aircraft maintenance hangar at the Bangor International Airport in Maine. Administrative Record ("AR") 60-120, 489-90. The RFP stated that the award would be based on a best value determination comprised of two approximately equal factors: past performance and price. AR 78-79. "Past performance" included the review of an offeror's references in the areas of quality control, timely performance, and management effectiveness as the most significant factors. AR 511. The RFP also indicated that the relevancy of an offeror's references "*may affect an offeror's overall Past Performance rating*." AR 79-80 (emphasis in original). The RFP included, in pertinent part, the following performance risk ratings:

> *Very Low Risk*: Performance met all contract requirements and exceeded many to the Government's benefit. Problems, if any, were negligible and were resolved in a timely and highly effective manner. Performance was current and generally very relevant to relevant. Excellent probability of success with overall very low degree of risk in meeting Government's requirements.
>
> *Low risk*: Performance met contract requirements. Good quality. Minor problems were identified; however, contractor took satisfactory corrective action to resolve where appropriate. Performance was current and generally very relevant to relevant. Good probability of success with overall low degree of risk in meeting the Government's requirements.
>
> *Average Risk*: Performance met most contract requirements. Adequate quality. Problems were identified; however, contractor usually took adequate corrective action. OR although performance exceeds expectations and was rated excellent to

3

>very good the projects submitted were generally semi-relevant to the efforts required by this solicitation. Fair probability of success with an average degree of risk in meeting the Government's requirements.

AR 82 (emphasis in original). The agency planned to evaluate "Price" on the basis of total amount proposed, including all options, taking into account price reasonableness and realism. AR 82-83. The RFP stated that the agency intended to evaluate proposals and award a contract without any offeror discussions. AR 78.

Sheridan submitted its initial proposal in response to the RFP on January 28, 2010. AR 313-99. Sheridan's total proposed price was $14,764,996, which was the second-lowest price submitted. AR 515, 519. Nauset, JCN, and five other offerors also submitted timely proposals. See AR 121-240, 241-312, 511-16. Nauset's total proposed price of $14,495,625 was the lowest price submitted. JCN's proposed price of $15,112,974 was the third lowest price. AR 515, 519.

On March 10, 2010, the agency's Source Selection Evaluation Board ("SSEB") completed its evaluation of the eight proposals. AR 489-509, 519. The SSEB assigned Sheridan a past performance rating of "Low Risk", which was the best rating received by any offeror. AR 492, 496, 498-99. The other seven offerors received lower past performance ratings. Nauset and JCN each received a rating of "Average Risk" in past performance. AR 492, 496.

The agency's contracting officer received the SSEB's summary evaluation report, and decided to establish a "competitive range" of offerors who had reasonable pricing and the lowest past performance rating. AR 519. Sheridan was the only offeror in this category. Id. On March 12, 2010, the contracting officer notified the seven other offerors that they were "outside the competitive range." AR 510, 678. The contracting officer concluded that Sheridan's higher price by two percent of overall cost was offset by the decreased risk of Sheridan's past performance rating. AR 516.[3]

The agency experienced delays in funding before it could make a contract award. AR 519. In such circumstances, where award was to be made without discussions, the RFP provided that offerors could adjust their prices to account for "fluctuating construction material market conditions." AR 612 at ¶ 3.7.1. Given this opportunity, Sheridan increased its price by $365,000 due to increased […] prices. AR 519. The contracting officer concluded that Sheridan's adjusted price still was the second lowest price submitted. Id. According to the RFP, adjustments for construction material market conditions "does not constitute and shall not be construed as discussions." AR 612 at ¶ 3.7.1. The agency awarded the contract to Sheridan on May 12, 2010 without offeror discussions, and on the

---

[3] The contracting officer apparently did not realize that the concept of "competitive range" does not apply where an agency awards a contract without conducting any offeror discussions. A "competitive range" of the most highly rated proposals should be utilized only when "discussions [with offerors] are to be conducted." FAR 15.306(c)(1).

basis of initial proposals. AR 554. The agency issued a notice to proceed to Sheridan on May 20, 2010. AR 598. The agency established the contract completion date as August 7, 2012. Id.

The agency provided debriefing letters to JCN and Nauset on May 26, 2010. AR 601-04. On May 28, 2010, JCN filed a protest at the GAO alleging unequal treatment in the agency's evaluation of proposals. AR 614-44. Specifically, JCN argued that: (1) it had been downgraded improperly for project references that were not for Pre-engineered Material Buildings ("PEMB"); (2) Sheridan's "low risk" past performance rating was not justified by the projects it had submitted; and (3) JCN was not afforded the same opportunity as Sheridan to adjust its price for fluctuating construction material prices. Id. On June 1, 2010, the agency suspended Sheridan's performance due to the filing of JCN's protest. AR 664. The lowest priced offeror, Nauset, did not contest the agency's evaluation and award decision, and has not intervened in this action.

On June 14, 2010, the agency notified the GAO that it was "planning to take corrective action, which renders the protest academic." AR 665. The GAO dismissed the protest on June 23, 2010. AR 668. On July 28, 2010, the contracting officer advised all offerors of the details of the corrective action, that the "competitive range" would be expanded to include the three offerors with the best combination of price and past performance, and that these offerors would be permitted to submit revised proposals for final evaluation. AR 678. None of the agency's requirements had changed, and the contracting officer again stated that the agency did not intend to conduct any offeror discussions. Id. On August 10, 2010, the contracting officer disclosed the total prices originally submitted by Offerors "A, B, and C." AR 681. The agency received the revised proposals from Sheridan, JCN, and Nauset on August 13, 2010. AR 679-80. The agency plans to make a new award decision in early September 2010. See Tr. 34.

Discussion

Standards for Issuance of Injunctive Relief

Under the Court's bid protest jurisdiction, the Tucker Act grants the Court broad discretion to "award any relief that the court considers proper, including . . . injunctive relief." 28 U.S.C. § 1491(b)(2) (2006); see also Rule 65 of the Court of Federal Claims ("RCFC"); PGBA v. United States, 389 F.3d 1219, 1223-24 (Fed. Cir. 2004) ("We give deference to the Court of Federal Claims' decision to grant or deny injunctive relief . . . ."). However, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); see also Software Testing Solutions, Inc. v. United States, 58 Fed. Cl. 533, 536 (2003). "[E]ven if a trial court finds that the government's actions in soliciting and awarding a contract were arbitrary, capricious, or not in accordance with law, the trial court retains discretion on whether to issue an injunction." Acad. Facilities Mgmt. v. United States, 87 Fed. Cl. 441, 472 (2009).

A plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) the existence of irreparable harm to plaintiff if the injunction is not granted; (3) the harm to plaintiff outweighs the harm to the government and to third parties; and (4) the granting of relief is in the public interest. FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993); accord Akal Sec., Inc. v. United States, 87 Fed. Cl. 311, 317 (2009); Eskridge Research Corp. v. United States, 92 Fed. Cl. 88 (2010). "No one factor, taken individually, is necessarily dispositive . . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp., 3 F.3d at 427. Conversely, "the absence of an adequate showing with regard to any one factor may be sufficient" to deny injunctive relief. Id.

A.  Likelihood of Success on the Merits

In general, "[a] plaintiff must show a reasonable probability of success on the merits to justify a preliminary injunction." Akal Sec., 87 Fed. Cl. at 317 (internal quotations omitted). This Court's limited review of agency procurement decisions is set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. See 28 U.S.C. § 1491(b)(4); NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). The APA provides that an agency's decision is to be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004); Tech. Sys., Inc. v. United States, 50 Fed. Cl. 216, 222 (2001). In other words, an agency action "may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Therefore, in the context of this bid protest, Sheridan must demonstrate the likelihood that the agency's decision to take corrective action in response to JCN's protest was improper. Sheridan has met this burden.

It is true that "'[c]ontracting officials in negotiated procurements have broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition.'" DGS Contract Serv., Inc. v. United States, 43 Fed. Cl. 227, 238 (1999) (quoting Rockville Mailing Serv., Inc., B-270161.2, 96-1 CPD ¶ 184 (Comp. Gen. 1996)). An agency's actions must still be "reasonable under the circumstances" to avoid being deemed contrary to law. DGS Contract Serv., 43 Fed. Cl. at 238; see also Omega World Travel, Inc. v. United States, 54 Fed. Cl. 570, 574-75 (2002).

In this case, and at this stage of the proceedings, the Court finds that the agency has misapplied the concept of "competitive range." Under the applicable regulations, an agency should establish a competitive range of "the most highly rated proposals" when "discussions [with offerors] are to be conducted." FAR 15.306(c)(1). The establishment of a competitive range enhances the efficiency of a procurement by allowing an agency to conduct discussions and evaluate final proposal revisions only from those offerors who have

a realistic chance of receiving the award. In like fashion, a competitive range determination relieves those offerors who have no chance of winning the award from wasting time in further pursuing the contract. However, a competitive range has no application where an agency does not engage in offeror discussions. Simply stated, an agency has no need to establish a competitive range where award will be made on the basis of initial proposals. The contracting officer's sensitivity here to establishing a competitive range, and to expanding the competitive range during corrective action, was irrelevant to the agency's procurement process.

Similarly, the contracting officer had no reason to request revised proposals from Sheridan, JCN, and Nauset in circumstances where none of the agency's requirements had changed. Where the agency had disclosed Sheridan's price to other offerors during the debriefing process, the request for revised proposals was particularly prejudicial to Sheridan, because JCN and Nauset knew the winning price of the first award to Sheridan. Although revised proposals often are employed during corrective action, the agency here created an auction process for no good reason. If anything, the agency could have re-evaluated the initial proposals if it thought there was merit to JCN's protest. There was no rational basis to put Sheridan through another round of proposals where the agency's requirements remained exactly the same, and the agency still contemplated making award without discussions. See Delaney Constr. Corp. v. United States, 56 Fed. Cl. 470, 476 (2003) (finding corrective action to provide explicit notice of a statutory requirement that existed throughout the procurement process served no useful purpose if the lack of notice had no impact on source selection).

The Court thus concludes at this stage that the agency's corrective action of expanding the competitive range that was never required or needed in this procurement lacks a rational basis and is contrary to law. The solicitation of revised proposals after disclosing Sheridan's price, where the agency's requirements remained completely unchanged, also lacks a rational basis. Accordingly, the Court finds that Sheridan is likely to succeed on the merits.

B.  Irreparable Harm

To succeed on a motion for a preliminary injunction, Sheridan must also demonstrate that, without the injunction, it will suffer irreparable harm before a decision can be rendered on the merits. Akal Sec., 87 Fed. Cl. at 319. "A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown." Qingdao Taifa Grp. v. United States, 581 F.3d 1375, 1379 (2009) (quoting Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983)).

Sheridan requests the Court to suspend all activities associated with the agency's corrective action because Sheridan may lose its contract award and potential lost profits. (Pl.'s Mem. Supp. Mot. Prelim. Inj. 25.) The Court has held that a loss of profits stemming

from a lost opportunity, which could not otherwise be recovered from the Government, often is sufficient to constitute irreparable harm.  See, e.g. Idea Int'l, Inc. v. United States, 74 Fed. Cl. 129, 141 (2006) (citing Cardinal Maint. Serv., Inc. v. United States, 63 Fed. Cl. 98, 110 (2004)); United Payors & United Providers Health Servs., Inc. v. United States, 55 Fed. Cl. 323, 333 (2003)).   In this case, Sheridan won the contract award, received a notice to proceed, and was preparing to begin performance.  Now, due to ill-conceived corrective action, Sheridan is faced with an unnecessary recompetition for the contract it previously won.  Unless the agency's corrective action is enjoined, Sheridan's retention of the contract may be in jeopardy, and the revenues Sheridan would have received under the contract potentially are lost.

Sheridan also maintains that it will be irreparably harmed through the loss of key personnel.  Thus far, the record shows the loss of one key person due to the delay caused by the agency's corrective action.  (Decl. of Bradley B. Nelson, ¶ 14.)  While the loss of personnel could in extreme circumstances constitute irreparable harm, the Court finds the present record insufficient to warrant injunctive relief on this basis alone.  However, the loss of a key employee certainly does not detract from Sheridan's argument, and together with the possible loss of a contract rightly won, satisfies the requirement to show irreparable harm.  Given the strength of Sheridan's likelihood of success on the merits, the Court is persuaded that without injunctive relief, Sheridan will suffer irreparable harm.  See Akal Sec., 87 Fed. Cl. at 319 (noting that the strength of a plaintiff's merits arguments can influence the Court's view of irreparable injury).

### C. Balance of Harms and Public Interest

Finally, the Court must balance the harm to the respective parties and consider whether the public interest would be served by the issuance of a preliminary injunction.  These final two factors are "less consequential" than the other two factors discussed above, which are required for a preliminary injunction.  See Qingdao Taifa Grp., 581 F.3d at 1382.

In deciding whether to grant a preliminary injunction, the Court must balance the harm that Sheridan would suffer without injunctive relief against the harms a preliminary injunction may inflict upon Defendant and Defendant-Intervenor.  See Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705, 715-16 (2006).  On this factor, Defendant argues that enjoining the corrective action would significantly harm the agency in two ways:  (1) it would delay performance such that work might have to be performed during the Maine winter; and (2) it would increase a potential claim by Sheridan for damages resulting from the stop-work order.  (Def.'s Opp'n Pl.'s Mot. Prelim. Inj. 29.)  From the Court's view, these alleged harms are of the agency's own making.  By taking unnecessary action to correct a harmless and irrelevant competitive range error, the agency created any potential harm that will result from the issuance of a preliminary injunction.  JCN also should not be affected.  Avenues are available if JCN wishes to pursue its grounds of protest.

8

Similarly, the public interest factor weighs in favor of injunctive relief.  The public interest is served by ensuring that contracting agencies follow applicable procurement statutes and regulations.  See, e.g., Magnum Opus Techs. v. United States, 2010 WL 2255523, at *34 (citing Heritage of Am., LLC v. United States, 11 Fed. Cl. 66, 80 (2007)); Hunt Bldg. Co. v. United States, 61 Fed. Cl. 243, 280 (2004); Cincom Sys., Inc. v. United States, 37 Fed. Cl. 266, 269 (1997)).  Conversely, the integrity of the procurement process would not be preserved if an agency were permitted to disclose offeror prices, request revised proposals for unchanged work, and base corrective action on an irrelevant and inapplicable "competitive range" determination.  See Delaney Constr. Corp., 56 Fed. Cl. at 476 (concluding "no public interest purpose has been established which would support" corrective action of an insignificant procurement error).  Accordingly, the factors of balancing the harms to the parties and furthering the public interest in the integrity of the procurement process also favor the issuance of a preliminary injunction.

## Conclusion

For the foregoing reasons, the Court finds that the prerequisites for entering a preliminary injunction are satisfied.  Plaintiff's Motion for a Preliminary Injunction is GRANTED.  The Court previously issued the Preliminary Injunction Order on September 1, 2010.

On or before September 10, 2010, the parties shall carefully review this opinion for competition-sensitive, proprietary, confidential or other protected information, and submit to the Court proposed redactions to this opinion, if any, before it is released for publication.  The parties are requested to minimize their requested redactions so that the Court may publish as much of the decision as possible.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge