# In the United States Court of Federal Claims

No. 10-547C

(Filed Under Seal: November 1, 2010)

(Reissued for Publication: November 5, 2010)[1]

| | |
|---|---|
| THE SHERIDAN CORPORATION,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>JCN CONSTRUCTION COMPANY, INC.,<br>Defendant-Intervenor. | Bid Protest; Improper Corrective Action Following GAO Protest; Standing; Ripeness; Request for Revised Proposals Where Agency Requirements Are Unchanged; Improper Use of Competitive Range; Impermissible Auction Following Price Disclosure; Permanent Injunctive Relief. |

*Michael A. Gordon*, with whom was *Fran Baskin*, law firm of Michael A. Gordon PLLC, Washington, D.C., for Plaintiff.

*Cameron Cohick*, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kenneth M. Dintzer*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*Robert J. Symon*, with whom was *Lewis P. Rhodes*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Defendant-Intervenor.

[1] The Court issued this Opinion under seal on November 1, 2010, and gave the parties until November 8, 2010, to submit any proposed redactions of competition sensitive, proprietary, confidential or other protected information. By notice filed with the Court on November 4, 2010, Defendant requested redactions from one sentence in the Background section and informed the Court that no other redactions were requested by the other parties. The redactions are indicated by [ . . . ].

OPINION AND ORDER

WHEELER, Judge.

In this bid protest, Plaintiff Sheridan Corporation ("Sheridan") challenges the reasonableness and legality of a procuring agency's corrective action to resolicit proposals where no apparent defect in the initial proposals exists. Following a competitive solicitation, the United States Property and Fiscal Office of Maine, National Guard Bureau (the "agency") awarded a contract to Sheridan on May 12, 2010 for the construction of a KC-135 aircraft maintenance hangar in Bangor, Maine. The agency based its award decision solely on the initial proposals received, without conducting any discussions with offerors.

On May 28, 2010, following a debriefing, Intervenor JCN Construction Company ("JCN") filed a bid protest with the Government Accountability Office ("GAO") alleging that Sheridan unfairly benefitted from the agency's disparate treatment of proposals. Due to JCN's timely bid protest, the contracting officer suspended performance of Sheridan's contract. A short time later, the agency announced that, rather than opposing JCN's protest, it would take corrective action. The GAO then dismissed JCN's bid protest as academic. Under the proposed corrective action, the agency planned to enlarge the "competitive range" by including the top three proposals from the initial submission, and inviting Sheridan, JCN, and a third offeror, Nauset Construction Company ("Nauset"), to submit revised proposals, which were due on August 13, 2010.

Sheridan filed suit in this Court on August 12, 2010, requesting declaratory and injunctive relief, alleging that the agency's corrective action is unlawful and lacks a rational basis. As Sheridan asserts, Defendant's administrative record does not explain why the agency invited revised proposals where none of the agency's requirements had changed from the original solicitation and no deficiencies existed in the initial proposals. Further, the agency's corrective action reflects a lack of understanding of the term "competitive range." The concept of a "competitive range" under Federal Acquisition Regulation ("FAR") 15.306(c) does not apply where an agency awards a contract on the basis of initial proposals without conducting any offeror discussions. The agency also disclosed Sheridan's winning price as part of the award and debriefing process. By requesting revised proposals, the agency impermissibly harmed Sheridan by allowing two unsuccessful offerors a second chance to win the award with knowledge of the winning price they had to beat. Although requesting revised proposals may be appropriate where an agency has modified the solicitation, or where the agency has engaged in discussions or negotiations before inviting offerors to submit final proposal revisions, the Court does not see any lawful or rational reason for inviting revised proposals as part of the corrective action here.[2]

[2] As the Court noted in its September 13, 2010 Opinion granting a preliminary injunction, if the agency believed there was some merit to JCN's protest, the agency could have taken corrective action by reevaluating the initial proposals to determine if some adjustment to the agency's award decision should be made. However, the agency did not pursue this form of corrective action and it is not before the Court.

On September 1, 2010, the Court issued a preliminary injunction enjoining the agency's proposed corrective action.[3] Currently before the Court are Plaintiff's and Defendant's motions for judgment on the administrative record, and Defendant's motion to dismiss for lack of standing.[4] For the reasons explained below, the Court finds that Sheridan has standing to pursue its protest. The Court further finds that the agency's chosen corrective action plan is unlawful and not rationally related to any identifiable defect in the procurement. The resoliciting of proposals for no apparent reason would be highly prejudicial to Sheridan, who had been selected and received the award on the basis of initial proposals. Therefore, the Court permanently enjoins the agency's corrective action.

## BACKGROUND

On December 4, 2009, the agency issued Solicitation No. W912JD-10-R-0001 (the "RFP") seeking proposals to construct a new 78,000 square foot aircraft maintenance hangar at the Bangor International Airport in Bangor, Maine. (AR 60-120.) The RFP provided that the agency would evaluate proposals based upon two factors of approximately equal importance – past performance and price. (AR 79.) In evaluating past performance, the agency would consider such items as an offeror's business practices, customer relationships, and ability to perform successfully as proposed. Upon review of the proposals, the agency assigned each offeror one of five performance risk ratings (very low risk, low risk, average risk, above average risk, and high risk). (AR 82.) If an offeror lacked current or relevant performance information, the agency assigned such offeror a rating of neutral. (AR 79.) In pertinent part, the RFP described the performance ratings of very low risk, low risk, and average risk as follows:

> *Very Low Risk*: Performance met all contract requirements and exceeded many to the Government's benefit. Problems, if any, were negligible and were resolved in a timely and highly effective manner. Performance was current and generally very relevant to relevant. Excellent probability of success with overall very low degree of risk in meeting Government's requirements.
>
> *Low risk*: Performance met contract requirements. Good quality. Minor problems were identified; however, contractor took satisfactory corrective action to resolve where appropriate. Performance was current and generally very relevant to relevant.

---

[3] The September 1, 2010 preliminary injunction was drafted by Sheridan's counsel and reviewed by Defendant's and JCN's counsel before entry by the Court. On September 13, 2010, the Court issued an Opinion and Order detailing the basis for the September 1, 2010 preliminary injunction.

[4] At the August 31, 2010 hearing the parties agreed, with the Court's approval, that Sheridan's complaint and memorandum of points and authorities in support of Sheridan's motion for a preliminary injunction filed on August 26, 2010, taken together, would be considered as Sheridan's motion for judgment on the administrative record.

> Good probability of success with overall low degree of risk in meeting the Government's requirements.
>
> *Average Risk*: Performance met most contract requirements. Adequate quality. Problems were identified; however, contractor usually took adequate corrective action. OR Although performance exceeds expectations and was rated excellent to very good the projects submitted were generally semi-relevant to the efforts required by this solicitation. Fair probability of success with an average degree of risk in meeting the Government's requirements.

(AR 82.) The agency also determined whether each offeror's proposed price was reasonable. (AR 82-83.) The agency did not, however, assign a rating based upon price. (AR 82.) The RFP provided in bold print that the agency intended to evaluate proposals and award a contract without discussions with offerors. (AR 78.)

Proposals were due not later than January 28, 2010. (AR 60.) By that date, the agency had received eight proposals in response to the RFP. (AR 489.) The Source Selection Board evaluated all of the proposals and issued a summary evaluation report on March 9, 2010. (AR 489-509.) The Source Selection Board assigned a performance rating of "low risk" to Sheridan. (AR 515.) Four of the proposals received a rating of "average" risk, one proposal received a rating of "above average risk," and two proposals received a rating of "neutral." Id. The three lowest prices were submitted by Nauset ($14,495,625), Sheridan ($14,764,996), and JCN ($15,112,974). Id. On March 12, 2010, the contracting officer sent notices to all offerors except Sheridan informing them that their proposals had "been excluded from the competitive range and thereby eliminated from the competition." See, e.g., AR 510. On March 19, 2010, the contracting officer, acting as Source Selection Authority, issued his Source Selection Document stating that he had "determined that the proposal submitted by The Sheridan Corporation in response to the Request for Proposal provides the best overall value to satisfy the needs of the Marine Air National Guard to successfully complete the construction project to 'Replace the KC-135 Maintenance Hangar in Bangor, Maine.'" (AR 511.)

On April 16, 2010, Sheridan submitted a revised proposal in response to the agency's request pursuant to section 3.7 of the RFP.[5] (AR 523-553.) Sections 3.7 and 3.7.1 provided that:

> 3.7. In the event the Government does not award a contract pursuant to this solicitation within seventy-five (75) calendar

[5] The record does not contain the complete correspondence leading to the revised solicitation. However, it appears from the record that Sheridan submitted the revised proposal at the request of the Government. For example, Sheridan's e-mail to the agency attaching the revised proposal states "[p]er your direction, please find our updated . . . submission." (AR 538.)

> days after receipt of proposals and award will be made without discussions, the following will apply:
>
> 3.7.1. The Government reserves the right to allow offerors to make an adjustment in their price proposals to allow pricing adjustments caused by fluctuating construction material market conditions. The Contracting Officer will notify Offerors, normally by electronic mail (email) of a common closing date for receipt of the adjusted price proposals. No additional proposal revisions will be allowed under these conditions. This does not constitute and shall not be construed as discussions.

(AR 83.) Because the agency had selected Sheridan as the best offeror by April 16, 2010, only Sheridan submitted a revised proposal. Due to fluctuations in [ . . . ], Sheridan revised its price [ . . . ], a [ . . . ] to the offered price. (AR 532.)

On May 12, 2010, the agency awarded the contract to Sheridan at the revised price. (AR 554.) On that same day, the agency sent letters to the unsuccessful offerors informing them of Sheridan's winning price and past performance rating. (AR 596.) On May 20, 2010, the agency issued a notice to proceed to Sheridan, authorizing the commencement of contract performance. (AR 598.) On May 26, 2010, the agency furnished post-award debriefing letters to JCN and Nauset. (AR 599-604.) On May 28, 2010, JCN filed a bid protest with the GAO alleging that Sheridan received disparate treatment in the evaluation of proposals. (AR 614-63.) Specifically, JCN argued that: (1) the agency improperly penalized JCN's performance risk rating for project references that were not for pre-engineered material buildings; (2) the projects Sheridan submitted as references did not justify the agency's "low risk" past performance rating; and (3) JCN did not receive the same opportunity as Sheridan to adjust its price for fluctuating construction material prices. Id.

On June 1, 2010, the agency suspended performance of Sheridan's contract due to JCN's bid protest. (AR 664.) By letter dated June 14, 2010, the agency requested the GAO to dismiss the bid protest because the agency planned to take corrective action. (AR 665.) On June 23, 2010, the GAO dismissed the protest as academic. (AR 668.) On July 28, 2010, the agency informed Sheridan that, under its corrective action plan, the agency would expand the "competitive range" to include three companies, including Sheridan, and the agency would invite Sheridan to submit a revised proposal for evaluation. (AR 679.) None of the agency's solicitation requirements had changed, and the contracting officer again stated that the agency did not intend to conduct any offeror discussions. Id. Additionally, as part of the corrective action, the agency revealed the prices of all three of the offerors' original proposals. (AR 681.)

## DISCUSSION

### I. Jurisdictional Issues

Defendant challenges Sheridan's standing to bring this action on three separate grounds. First, Defendant argues that Sheridan has not suffered any injury and therefore does not have standing under the Lujan standard. (Def.'s Mot. Dismiss 15-16.); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). In the alternative, Defendant argues that Sheridan's claims are not yet ripe because the agency has not made any final decision as a result of the corrective action. (Def.'s Mot. Dismiss 16-19.) Finally, Defendant asserts that Sheridan's suit is essentially a challenge to the Government's right to terminate the contract for convenience, and is beyond this Court's bid protest jurisdiction. Id. at 21-23.

Standing is a threshold jurisdictional issue that must be met before a case may proceed on the merits. Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002). In considering a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court must presume that all factual allegations in the complaint are true, and construe all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The party invoking federal jurisdiction bears the burden of establishing that it may bring its case before the Court. Lujan, 504 U.S. at 561.

#### A. Sheridan has Standing under the Tucker Act.

Sheridan states in its complaint that jurisdiction is conferred upon the Court under the Tucker Act, 28 U.S.C. § 1491(b)(1) (2006), as "an awardee whose contract is being unreasonably jeopardized by [Defendant's] corrective action . . . ." (Compl. 4.) Pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 (the "ADRA"), Pub. L. No. 104-320 § 12(a)-(b) (1996), the Court has jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This Court has found that the ADRA provides jurisdiction over three types of actions generally regarded as bid protests. OTI America, Inc. v. United States, 68 Fed. Cl. 108, 113 (2005). These three actions are: (1) pre-award protests (i.e., objections "to a solicitation by a Federal agency for bids or proposals for a proposed contract" or award); (2) post-award protests (i.e., objections to "the award of a contract"); and (3) any "alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); see also OTI America, 68 Fed. Cl. at 113.

Sheridan argues that, even though it has been awarded the contract, the agency's corrective action of resoliciting revised proposals has placed the procurement back into a

pre-award status and therefore jurisdiction is provided under 28 U.S.C. § 1491(b)(1). Where the plaintiff, as the contract awardee, files a protest challenging an agency's decision to resolicit proposals, this Court has held that plaintiff's protest "is in the nature of a pre-award claim." IMS Servs., Inc. v. United States, 32 Fed. Cl. 388, 398 (1994); see also Logicon, Inc. v. United States, 22 Cl. Ct. 776 (1991) (taking jurisdiction of the plaintiff's claim where the Government rescinded its contract); Centech Group, Inc. v. United States, 78 Fed. Cl. 496, 505 (2007) (finding that the plaintiff's objection to the Air Force's issuance of a new amendment entailed pre-award conduct), *aff'd*, 554 F.3d 1029 (Fed. Cir. 2009).

In this case, the Court finds the analysis in IMS Services particularly relevant. In IMS Services, the plaintiff argued that its claim fell under the Court's pre-award bid protest jurisdiction because the Navy rescinded its contract and required it to participate in a second round of best and final offer negotiations with other offerors. 32 Fed. Cl. at 397. The Court concluded that it had jurisdiction because, despite the existence of a contract, the plaintiff's claims were in the nature of a pre-award protest due to the Navy's subsequent actions. Id. The Court explained that:

> Although plaintiff has a piece of paper titled award/contract, which states that the contract has been awarded . . . , plaintiff has no certainty or reasonable expectation that [it] will be directed to proceed under the terms and conditions of the [previous] award. As a result, that piece of paper means very little. The court agrees that a finding that plaintiff's claims are in the nature of a post-award protest would be to engage in a legal fiction. All plaintiff has is a mere hope that after the resolicitation process, plaintiff may once again be selected, and that, this time, the defendant will order it to proceed to performance.

Id. at 399.

Similarly, in Delaney Construction Corp. v. United States, the Court found that the contract awardee had standing where the agency's corrective action included reopening the competition. 56 Fed. Cl. 470 (2003). The Court held that such corrective action "involves returning the status of this procurement to its pre-award stage . . . ." Id. at 474. Therefore, the Court concluded that Delaney had standing because "[w]ith respect to the proposed corrective action, plaintiff is a prospective offeror whose direct economic interest would be affected by the new award of the contract which would occur on the basis of the corrective action at issue." Id. (citing IMS Servs., 32 Fed. Cl. 388).

The Court's recent decision in Ceres Gulf, Inc. v. United States, No. 10-319C, 2010 WL 3511558 (Fed. Cl. Aug. 27, 2010), stands for the same proposition. In that case, the Court held that the awardee had standing to file a bid protest where the Army rescinded the awarded contract and resolicited revised proposals as a result of corrective action. Id. The Court ruled that the Army's actions made the previous award in effect, a nullity, and the

plaintiff's claims amounted "to an objection to the Army's pre-award conduct." Id. Therefore, the Court concluded that the Army's decision to reopen the procurement provided the Court with jurisdiction and it denied Defendant's motion to dismiss for lack of standing. Id.

Defendant attempts to distinguish the extensive body of case law by arguing that Sheridan has suffered no injury. In Defendant's view, the contract to be awarded from the corrective action will be on the same terms as currently awarded to Sheridan and thus, Sheridan may retain the same contract. (Def.'s Reply 8.) The Court finds this argument wholly unconvincing. Defendant's interpretation of "injury in fact" ignores the definition and context provided to that term by 28 U.S.C. § 1491(b)(1) and the resulting case law. Although the ADRA does not provide a definition for the term "interested party," the Federal Circuit has construed the term as defined in the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3551(2) (2006). See, e.g., American Fed'n of Gov't Employees, AFL-CIO v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001). Therefore, standing under 28 U.S.C. § 1491(b)(1) is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id.

Sheridan has met its burden to show that it is an interested party under 28 U.S.C. § 1491(b)(1). To have standing under 28 U.S.C. § 1491(b)(1), Sheridan must establish that it is (1) an actual or prospective offeror and (2) has a direct economic interest that would be affected by award of the contract. Banknote Corp. of America v. United States, 365 F.3d 1345, 1352 (Fed. Cir. 2004). Sheridan has demonstrated its economic interest as an offeror in an on-going solicitation. Sheridan's economic interest is evident from its current posture of having its previously awarded contract suspended, having been denied the opportunity to begin performance, and waiting to see whether the agency lifts the contract suspension or terminates the contract for convenience. Indeed, it is difficult to imagine a party that is more economically interested than Sheridan who, having been selected and awarded the contract, would have to wait to receive the Government's new decision following the resolicitation of proposals. Sheridan understandably is injured by the financial burden of this situation, and clearly falls within the purview of an "interested party" under 28 U.S.C. § 1491(b)(1). Therefore, the Court finds that Sheridan has properly demonstrated its standing and jurisdiction under the Tucker Act.

B. Sheridan's Claim is Ripe for Review.

Defendant argues that Sheridan lacks standing because its claim is not ripe for adjudication. Generally, a claim is not ripe if it is contingent upon future events. Bannum, Inc. v. United States, 56 Fed. Cl. 453, 462 (2003). The "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized . . . ." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), *overruled on other grounds by* Califano v. Sanders, 430

U.S. 99 (1997). In determining the ripeness of a claim, the Court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court decision." Id. at 149. See also Madison Servs., Inc. v. United States, 90 Fed. Cl. 673, 678 (2009); Confederated Tribes & Bands of the Yakama Nation v. United States, 89 Fed. Cl. 589, 604 (2009).

Under the first element of the ripeness test, an action is not fit for judicial review until the agency adopts a final decision. Madison Servs., 90 Fed. Cl. at 678. An agency's decision is considered final where it "(1) marks the consummation of the agency's decision making process, i.e., it must not be merely tentative or interlocutory, and (2) the action is one by which rights or obligations have been determined, or from which legal consequences will flow." Id. (internal quotations omitted). The second element of the ripeness test is whether "withholding court consideration of an action causes hardship to the plaintiff where the complained-of conduct has an 'immediate and substantial impact' on the plaintiff." Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc., 527 F.3d 1278, 1295 (Fed. Cir. 2007) (quoting Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 171 (1967)). The Federal Circuit has noted that "[a] sufficient risk of immediate hardship may warrant prompt adjudication." Confederated Tribes, 89 Fed. Cl. at 604 (citing Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1580-81 (Fed. Cir. 1993)).

Defendant asserts that Sheridan fails to satisfy the first element of the test because the agency has not reached a final determination from the corrective action, and therefore the issues are not ripe for judicial decision. However, the Government's argument is flawed because it fails to recognize the fundamental basis of Sheridan's claim. Sheridan is not challenging the results of the corrective action – it is challenging the implementation of the corrective action itself. The issue before the Court is the agency's rationale for its decision to take corrective action in the first place, and the reasonableness of that chosen action. That decision is ripe for review at this time.

Defendant also argues that, even if the agency made a final determination, the harm to Sheridan is nonexistent because Sheridan originally won the contract and may still retain the contract. The Government ignores the harm it has imposed on Sheridan by forcing Sheridan to recompete for a contract that it has already won. The Government asserts that Sheridan *could* still retain the contract, but it is unclear at what cost Sheridan would win the contract again. Sheridan has been placed at a severe competitive disadvantage because the agency disclosed Sheridan's winning price to competitors. Sheridan's competitors, all of whom received lower performance ratings than Sheridan, undoubtedly will engage in a price battle, forcing Sheridan to undercut its previous price or risk losing the contract. The Court finds this untenable position to be a substantial harm to Sheridan caused directly by the agency's chosen corrective action and thus, the claim is ripe for judicial review.

Moreover, were the Court to dismiss Sheridan's claims as not ripe for review, the current protest grounds later could be challenged as untimely if Sheridan does not prevail during the resolicitation process. The Federal Circuit held in Blue and Gold Fleet, L.P. v.

United States that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." 492 F.3d 1308, 1313 (Fed. Cir. 2007). Indeed, "[v]endors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award [sic] and then, if unsuccessful, claim the solicitation was infirm." Id. at 1315 (quoting Argencord Mach. & Equip. v. United States, 68 Fed. Cl. 167, 175 n.14 (2005)). In bringing this suit at the present stage, Sheridan has attempted to comply with the very rules that this Court and the Federal Circuit have established. Dismissing Sheridan's claim for lack of standing would be tantamount to denying Sheridan any judicial review of its present claims. See Centech Group, 78 Fed. Cl. at 506. Sheridan has established jurisdiction under the Tucker Act and may have its claims heard in this Court at this time.

C. The Court is not Restricting any Convenience Termination Rights.

Finally, Defendant argues that this Court lacks jurisdiction because Sheridan's claim amounts to a challenge of the Government's ability to terminate a contract for convenience, which Defendant alleges is beyond the Court's jurisdiction. Yet again, Defendant mischaracterizes the foundation of Sheridan's claim. Sheridan is not challenging some abstract ability of the Government to terminate for convenience – it is challenging the propriety of the Government's chosen corrective action in relation to the RFP.

This Court and the Federal Circuit have ruled that jurisdiction exists to review an agency's corrective action decision. See, e.g., Centech Group, 78 Fed. Cl. at 506; Chapman Law Firm v. United States, 490 F.3d 934, 938 (Fed. Cir. 2007) (holding that the Court's inquiry into the reasonableness of the Government's proposed corrective action was proper); Delaney Constr. Corp., 56 Fed. Cl. at 474 (finding that plaintiff has standing to initiate a protest challenging the propriety of a corrective action); ManTech Telecomm. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 65 (2001) ("[T]his Court . . . will not object to an agency's proposed corrective action provided it is reasonable under the circumstances.") (internal quotation omitted). Therefore, contrary to Defendant's assertions, "this Court possesses jurisdiction to determine if the corrective action taken by a procuring agency as a result of a bid protest was reasonable under the circumstances." Centech Group, 78 Fed. Cl. at 506. Such a review does not have any bearing on the Government's abstract ability to terminate for convenience.

Furthermore, the Government's discretion in this matter is not as limitless as Defendant suggests. This Court has not hesitated to enter injunctive relief where circumstances warrant, such as when the Government has taken improper corrective action consisting of terminating a contract for convenience and resoliciting the contract. See Delaney Constr. Corp., 56 Fed. Cl. at 476; MCII Generator & Elec., Inc. v. United States, No. 02-CV-00085, 2002 WL 32126244 (Fed. Cl. Mar. 13, 2002). Defendant attempts to distinguish the Court's injunctive powers in cases where the contract is only suspended

versus those where it has been terminated. However, the Court finds no meaningful difference in this distinction. In either case, the propriety of the corrective action is at issue. If the Court can provide injunctive relief undoing a termination for convenience where the corrective action was improper, then it certainly has jurisdiction to provide injunctive relief to prevent the corrective action in the first place. See, e.g., Delaney Constr. Corp., 56 Fed. Cl. at 476. Therefore, Defendant's motion to dismiss the complaint for lack of standing is DENIED. The Court will proceed to address the merits of Sheridan's claims.

## II. The Agency's Planned Corrective Action is Unlawful and Irrational.

The Court now turns to whether the agency's proposed corrective action was improper or otherwise contrary to law. The Court's limited review of agency decisions is set forth in the Administrative Procedures Act ("APA"). 5 U.S.C. § 706(2)(A). The APA provides that an agency decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (incorporated by reference in 28 U.S.C. § 1491(b)(4)); Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Therefore, an agency's procurement decision may be set aside if it lacked a rational basis or involved a violation of statute or regulation. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). This standard of review is highly deferential to the agency's decision. Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000).

In applying this standard to an agency's corrective action, contracting officers are provided "broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition." DGS Contract Serv., Inc. v. United States, 43 Fed. Cl. 227, 238 (1999) (quoting Rockville Mailing Serv., Inc., B-270161.2, 96-1 CPD ¶ 184 (Comp. Gen. Apr. 10, 1996)). Nevertheless, the chosen corrective action must be "reasonable under the circumstances." Id. To be reasonable, the agency's corrective action must be rationally related to the defect to be corrected. MCII Generator & Elec., 2002 WL 32126244. Furthermore, the reason for the corrective action must be supported by the evidence in the record. Id.

Despite the wide latitude afforded to an agency's corrective action, the Court finds the evidence lacking in this case. The record is devoid of any justification for the agency's decision to solicit revised proposals. Defendant asserts that corrective action was necessary to address defects in the procurement raised by JCN in its bid protest. Specifically, Defendant contends that, because of an incorrectly established competitive range, the agency improperly provided Sheridan with disparate treatment. Although the Court will analyze the appropriateness of the corrective action, the issue of whether Sheridan received any disparate treatment is not currently before the Court and will not be addressed in this Opinion.[6]

[6] JCN raises a concern that the Court's ruling will preclude JCN's original protest grounds from ever being heard. However, counsel for JCN informed the Court at oral argument that JCN consciously decided "for financial reasons" not to pursue its grounds for protest in this Court. (Oral Arg., Oct. 13, 2010, Tr. 23.)

Defendant contends that the corrective action is necessary because the contracting officer committed an error by not establishing "a competitive range comprised of all of the most highly rated proposals" as required by FAR 15.306(c)(1). Defendant alleges that this error occurred because the contracting officer, in setting the competitive range, incorrectly attributed to Sheridan a past performance rating of "very low risk," instead of the actual assigned factor of "low risk." In making this assertion, Defendant cites the April 20, 2010 Memorandum for the Record – Analysis of Proposal Summary, which states "[o]n 12 Mar 10 a Competitive Range was established which consisted of all offerors that were considered to have reasonable and realistic pricing, and received a rating of Very Low Risk." (AR 519.) Defendant suggests that, had the contracting officer correctly evaluated Sheridan's risk factor in setting the competitive range, the range would have consisted of the top three offerors instead of only Sheridan. Defendant's argument is flawed for two reasons: (1) the competitive range was an unnecessary procedural step; and (2) it is unclear from the record that the agency evaluated Sheridan's past performance risk rating incorrectly.

First, the competitive range described in FAR 15.306(c)(1) is inapplicable where, as here, the agency awards the contract without conducting any offeror discussions. The only error in this case was the agency's use of the term "competitive range" in the first place. Defendant cites the second sentence of FAR 15.306(c)(1) for the proposition that the competitive range should have consisted of more than just one proposal. The second sentence of FAR 15.306(c)(1) states: "the contracting officer shall establish a competitive range comprised of all of the most highly rated proposals . . . ." However, Defendant consistently ignores the first sentence of FAR 15.306(c)(1) which provides: "[a]gencies shall evaluate all proposals in accordance with 15.305(a), and, *if discussions are to be conducted*, establish the competitive range." (emphasis added). The first sentence of FAR 15.306(c)(1) instructs on *when* to create a competitive range, and the second sentence instructs on *how* to establish a competitive range.

In this case, the agency did not conduct any discussions with offerors, and stated in the RFP that it did not intend to conduct discussions. (AR 78.) Because of the lack of any discussions with offerors, the agency should not have created a competitive range and should have simply awarded the contract to the highest rated proposal. The concept of a competitive range in this case was entirely meaningless and unnecessary. Accordingly, because the concept of a competitive range was inapplicable to this solicitation, any issue relating to the size of the competitive range was not a defect in need of correction, but simply an unnecessary step that the agency should have ignored in the first place.

Second, Defendant cites an error that caused the contracting officer to limit the "competitive range" only to Sheridan. Allegedly, the contracting officer incorrectly believed that Sheridan was the only proposal to receive a "very low risk" rating. The administrative record at best is ambiguous on whether this error actually occurred as Defendant suggests. Defendant asserts that this error is based on a statement in the agency's

April 20, 2010 memorandum summarizing the procurement that Sheridan was assessed as "very low risk." (AR 519.) However, it is impossible to conclude that the addition of the word "very" in the April 20, 2010 memorandum was not simply the result of a typographical error or an improper recollection. The record suggests that, at the time the agency selected Sheridan as the best value proposal, it had evaluated Sheridan's proposal as "low risk." The Source Selection Document, dated March 19, 2010, states that "the proposal presented by The Sheridan Corporation, which revealed the highest rated Past Performance assessment of all offerors and the only Low-Risk offeror assessed, combined with the second lowest price provides the best overall value to the Government." (AR 516.) Defendant thus cites a memorandum written over a month after source selection as proof that somehow the agency incorrectly evaluated Sheridan as "very low risk." The Court, however, finds the contemporaneous statements from the Source Selection Document to be the more persuasive evidence of the agency's evaluation of Sheridan's proposal.

A careful review of the administrative record does not reveal any errors that required corrective action. Even if the Court accepts JCN's assertion that Sheridan received disparate treatment requiring corrective action, the chosen corrective action to resolicit proposals was improper. Defendant has never suggested that Sheridan did not submit the best proposal. Defendant's counsel has agreed that the actual proposals received by the agency had no flaws. (Oral Arg., Oct. 13, 2010, Tr. 20.) The only potential error acknowledged by the agency is in the evaluation of the proposals. Although the APA grants the Government wide latitude in its decision-making process, this Court has rejected corrective action to resolicit proposals because of a perceived evaluation error. See, e.g., Delaney Constr. Corp., 56 Fed. Cl. at 476; MCII Generator & Elec., 2002 WL 32126244. Simply put, the corrective action must target the identified defect. Here, the agency's concern related to the evaluation of the proposals. Any corrective action should have been targeted to that issue. Resoliciting new proposals was not a rational corrective action.

The Court finds the circumstances here analogous to Delaney. 56 Fed. Cl. 470. In that case, Delaney, a self-certified small business, submitted the lowest priced, technically acceptable offer. Id. at 472. Tug Hill, a self-certified HUBZone small business contractor, submitted the second lowest priced, technically acceptable proposal. Id. During the debriefing following the agency's decision to award the contract to Delaney, the agency informed Tug Hill that the agency initially considered applying a ten percent HUBZone price preference required by 15 U.S.C. § 657a to Tug Hill's price, which would have made Tug Hill's bid the lowest technically acceptable offeror. However, the agency determined that the preference did not apply when a HUBZone small business competed against another small business, and therefore, the agency awarded the contract to Delaney. Id. Tug Hill initiated a size protest contending that Delaney did not meet the required small business size standards. Id. Shortly thereafter, Delaney notified the contracting officer that it had failed to consider revenues from affiliated companies, and conceded that it no longer met the small business standards. Id. at 473.

Following an unsuccessful agency level protest, Tug Hill submitted a protest to the GAO. Id. Ten days later, the agency requested GAO to dismiss the protest because it intended to take corrective action. Id. As part of the corrective action, the agency elected to reopen the competition and insert a clause regarding the HUBZone ten percent preference. Id. Both Delaney and Tug Hill objected to the proposed corrective action to reopen the competition. Id. at 473-74. The Court held that, because the prices had been disclosed,[7] the proposed corrective action to obtain new price proposals "would comprise arbitrary action." Id. at 476. The Court explained that "[n]o public interest purpose has been established which would support trashing the disclosed proposed prices, obtained on the basis of full and open competition, in favor of obtaining new prices as a result of adding a contract clause which only provides notice of a statutory requirement that existed at all relevant times." Id.

Similarly, in MCII Generator & Electric, an unsuccessful offeror filed a bid protest with the GAO alleging that the Army had improperly evaluated its price and the awardee's risk in making its selection. 2002 WL 32126244. The Army proposed to take corrective action by resoliciting proposals. Id. The awardee brought suit seeking injunctive relief to stop the resolicitation because the proposed corrective action lacked a rational connection to any identified defect. Id. The Court in MCII Generator struggled, as this Court does here, to find any defect in the initial procurement selection, let alone a defect that warranted reopening the competition. Id. The Court enjoined the Army's proposed corrective action finding that "the integrity of the procurement system requires that award decisions not be overturned for no reason or for insubstantial reason." Id.

The Court finds the MCII Generator case particularly relevant to the present case. In both situations, the "defect" identified by the Government had no relation to the proposed corrective action. The record in both cases suggests that the respective agencies made the correct award decisions, and that if any flaws in the process existed, such flaws occurred during the evaluation of the properly submitted proposals. In such circumstances, a reevaluation of the proposals may be warranted, but a resolicitation of the proposals compromises the integrity of the procurement system, especially where the winning price has been disclosed to the public.

Defendant argues that this case can be distinguished from Delaney, MCII Generator, and other cases because here, the resolicitation is on identical terms. The Court finds this position entirely illogical. Instead, the fact that the agency conducted the resolicitation on identical terms further strengthens Plaintiff's argument that a resolicitation was improper and unnecessary. Where the terms of the RFP remain unchanged and the initial proposals were properly submitted, there is no rational basis for the agency to resolicit proposals that it already received under a properly conducted solicitation. The only conceivable reason to permit resolicitation would be to allow the unsuccessful offerors an opportunity to beat the

[7] In Delaney, the prices of all offerors had been inadvertently disclosed. Id. at 472. However, the Court finds the reasoning of Delaney to be equally applicable where only the winning price had been initially disclosed.

now disclosed price of the winning proposal. Such a result is impermissible and would severely damage the integrity of the procurement process.

Finally, Defendant argues that, because of the passage of time in this case, a resolicitation is necessary to ensure that all the proposals are accurate and up-to-date. This argument is unsupported by the administrative record and was raised for the first time during oral argument. See Oral Arg., Oct. 13, 2010, Tr. 25. Any issues resulting from the passage of time were of the Government's own creation and cannot support the agency's attempt to resolicit proposals. Furthermore, there are mechanisms in the RFP to adjust the price as necessary to take into account fluctuations in the price of materials as a result of the delay. Therefore, the Court concludes that the proposed corrective action of resoliciting proposals lacks a rational basis and is not supported by the administrative record.

III. Sheridan is Entitled to a Permanent Injunction.

The Tucker Act grants the Court broad discretion to "award any relief that the court considers proper, including . . . injunctive relief." 28 U.S.C. § 1491(b)(2); see also Rule 65; PGBA v. United States, 389 F.3d 1219, 1223-24 (Fed. Cir. 2004) ("We give deference to the Court of Federal Claims' decision to grant or deny injunctive relief . . . ."). On September 1, 2010, the Court issued a preliminary injunction drafted by Sheridan's counsel, followed by an Opinion and Order dated September 13, 2010. The Court's Opinion explained that Plaintiff satisfied the four factors required for a preliminary injunction: (1) a likelihood of success on the merits; (2) the existence of irreparable harm to plaintiff if the injunction is not granted; (3) the harm to plaintiff outweighs the harm to the Government and to third parties; and (4) the granting of relief is in the public interest. The standard for the issuance of a permanent injunction is identical to that of a preliminary injunction, except that instead of showing a likelihood of success as required by the first element, a plaintiff must actually succeed on the merits of the case. PGBA, 389 F.3d at 1223-24. Plaintiff has now succeeded on the merits of its case to show that the corrective action lacked a rational basis and the Court finds that a permanent injunction is appropriate relief.

As discussed in the Court's September 13, 2010 Opinion, unless the agency's corrective action is enjoined, Sheridan faces irreparable harm from an unnecessary recompetition for a contract it has already won. Without an injunction, Sheridan may lose the contract and the associated revenues. Even if Sheridan is able to retain the contract following the proposed resolicitation, Sheridan would have been forced to recompete in circumstances where its winning price had already been revealed to the competition.

Finally, the Court finds that the balance of the harms and the public interest determination from the September 13, 2010 Opinion remains equally valid today. Defendant asserts that it would be harmed because the injunction would further delay the difficult construction and increase any claim for equitable adjustment Sheridan may have. The Court disagrees that either of these harms would necessarily result from a permanent

injunction. Even if the Government were to be harmed as it claims, such harm would be the result of delays of its own creation.

In contrast, consideration of the public interest supports a permanent injunction. The public has a profound interest "in preserving the integrity of the procurement process by requiring the government to follow its procurement regulations." Hospital Klean of Texas, Inc. v. United States, 65 Fed. Cl. 618, 624 (2005). The integrity of the procurement process could not be preserved if an agency were permitted to disclose offeror prices, request revised proposals for unchanged work, and base corrective action on an irrelevant and inapplicable "competitive range" determination. See Delaney Constr. Corp., 56 Fed. Cl. at 476. Accordingly, balancing the harm to the Government against the public interest served in maintaining the integrity of the procurement process supports the issuance of a permanent injunction.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has standing and Defendant's motion to dismiss is DENIED. The Court further finds the corrective action to be unreasonable and Plaintiff's motion for judgment on the administrative record is GRANTED. Defendant's motion for judgment on the administrative record is DENIED. Having found that the prerequisites for entering a permanent injunction are satisfied, Defendant is hereby permanently ENJOINED from conducting the proposed corrective action to resolicit proposals.

On or before November 8, 2010, the parties shall carefully review this opinion for competition-sensitive, proprietary, confidential or other protected information, and submit to the Court proposed redactions to this opinion, if any, before it is released for publication. The parties are requested to minimize their requested redactions so that the Court may publish as much of the decision as possible.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge